THE CITY OF CHICAGO
*v.*
WALTER H. WILSON *et al.* .

195    19
202    538

*Opinion filed February 21, 1902.*

SPECIAL ASSESSMENTS—*when a sidewalk ordinance is not void for unreasonableness.* An ordinance for the construction, by special assessment, of a cement sidewalk twenty feet wide on each side of a street one hundred feet wide is not unreasonable, where it appears that the improvement district is both a residence and business locality within one block of the most desirable residence street in the city; that unimproved property abutting upon the line of the improvement is worth from $150 to $300 per front foot; that the existing sidewalks are uneven plank walks, varying in width from six to twenty feet, and that they are out of repair and unsafe.

APPEAL from the County Court of Cook county; the Hon. R. H. LOVETT, Judge, presiding.

CHARLES M. WALKER, Corporation Counsel, and ROBERT REDFIELD, for appellant.

MASON & NOYES, for appellees.

Mr. JUSTICE RICKS delivered the opinion of the court:

This is an appeal from an order of the county court of Cook county sustaining objections of appellees to the confirmation of a special assessment to pay the cost of constructing a cement sidewalk in front of appellees' properties on certain portions of Cottage Grove avenue between Forty-seventh and Fifty-first streets, in the city

of Chicago. Appellees objected on the ground that the ordinance, so far as it affected the property objected for, was unreasonable, unjust, burdensome, and therefore void. The court found the issues for the objectors, and from this holding the appeal was prosecuted.

The ordinance in question was passed on the 14th day of May, 1900, under the provisions of the act of June 14, 1897, (Hurd's Stat. 1899, chap. 24, p. 362,) and no complaint is made that there was any irregularity in the passage of the ordinance, the sole and only question presented being whether the ordinance is unreasonable. It provides for the construction of a twenty-foot cement walk on each side of Cottage Grove avenue, from the south curb line of Forty-seventh street to the north curb line of Fifty-first street.

The basis of the complaint against the ordinance is, that appellees had sufficient walks in front of their premises and that a walk such as this ordinance provides for is unnecessary, and that the requirement to build it is, under the circumstances, unreasonable. The total length of the improvement, counting both sides of the street, is about one mile. The street is one hundred feet wide, the roadway sixty feet wide and twenty feet from the curb line on each side to the lot line. The locality of the improvement is in the vicinity of Washington Park, Fifty-first street, the south end of the improvement district forming the north line of said park. It is one block west of Drexel boulevard,—one of the most important and desirable streets on the south side in said city. The evidence shows that the general character of the walks, outside of the cement walks, is that they are built of plank; walks varying in width from six to twenty feet; uneven as to grade and in a generally dilapidated and worn condition. The property along the line of the proposed walk becomes more valuable as it extends south from Forty-seventh street and to Washington Park, varying, according to the improvements surrounding each

particular locality, from $150 to $300 per front foot, exclusive of the improvements. Between Forty-seventh and Forty-eighth streets, on the west side, are one or two buildings in the middle of the block and one on the southeast corner of the block. On the east side, beginning at Forty-seventh street, are buildings for one hundred feet extending south. Between Forty-eighth and Forty-ninth streets, on the east side, is vacant. On the west side there are buildings, and between Fiftieth and Fifty-first streets, on the east side, there are three or four flat-buildings and stores. The west side of the street, between Fiftieth and Fifty-first streets, is well built up to within seventy-five feet of Fiftieth street, there being but seventy-five feet of vacant ground in that block on the west side. The buildings are flat-buildings, store buildings, saloons and summer gardens. The buildings, in value, vary from $5000 to $50,000 each. The property of one set of objectors, owners of lot 4, Cormack's subdivision, had a twenty-foot plank walk that was built some seven or eight years ago; had been a number of times repaired; stringers were rotten, boards decayed and broken at the ends and a number of holes in the walk, and the testimony showed that it would cost from twenty-five to fifty per cent of the value of the walk to put it in proper condition. The walk is one hundred and thirty-two feet long. The property of the other objector, Wilson, being lot 1 and part of lot 2, Laflin's sub-lots 1 and 2, is improved property with a frontage of seventy-two feet, and has in front of it a fourteen-foot plank walk, the age of which it is hard to ascertain from the testimony, but is old and its condition was shown to be very bad. It had been a number of times repaired and improved, and the evidence showed that it would cost from twenty-five to fifty per cent to put it in fair and safe condition. The evidence further showed that after the passage of this ordinance and pending this proceeding the objector had a number of stringers put in and a number of planks put

down, using about one hundred and fifty feet of lumber; but still, with these improvements, the evidence clearly demonstrates that this walk was an unsafe and unfit walk for a city, and that it was four or five inches lower than the cement walk to which it joined. The property of this objector is improved, having upon it a four-story building of the value of $30,000 to $40,000. The assessment on this property was $290.80, and upon lot 4, above, $516.92. The evidence further showed that a great many of the owners of lots, under the notice to them from the city, built the walk as required, so that one-third of it was completed at the hearing.

The insistence of appellant is, that, taking the character and location of this street and the properties along it, the improvement was one in keeping therewith, and that as to the particular objectors, their walks were in such condition that it was necessary that they be replaced with other and safe walks, and that to attempt to repair them would not only be at unreasonable cost and still have unsuitable walks, but in addition thereto would conflict with an ordinance of the city establishing what was termed the "stone district." This latter ordinance defines a large amount of territory, and requires that all walks therein shall be made or re-built of stone or other incombustible material, and that no wood walks in that territory which should become worn should be re-laid or repaired where the cost of the necessary repairs would exceed ten per cent of the original cost of such wood walks. Appellees insist that this latter ordinance cannot control, because the territory defined as "stone district" has a broken line. We have examined the ordinance, and, in so far as it would affect this property, think that it sufficiently shows it to be within the stone district. We do not, however, regard that as controlling, as, if the ordinance for the improvement in question is so unreasonable as to render it void, the ordinance creating the stone district could not aid it.

Appellees, in stating their position with reference to this ordinance, say: "If from all the surrounding circumstances the court deems the ordinance unreasonable and oppressive it may sustain objections and dismiss the proceedings." In support of this position appellees cite *Hawes* v. *City of Chicago*, 158 Ill. 653. In that case, on page 659, it is said: "The rule is, that it requires a clear and strong case to justify a court in annulling the action of a municipal corporation acting within the apparent scope of its authority." Appellees also cite other cases which are not, as we regard them, in point and arose upon an entirely different state of facts. The *Hawes case, supra,* relied upon by appellees, was, as it seems to us, a strong appeal for the application of the rule of unreasonableness. There the objector owned a twenty-acre tract with a frontage of 1266 feet on the street being improved, and was required to build a cement sidewalk, and his assessment was $1638.75. The property was used for a hay field, and did not have a building of any sort upon it. Five months prior to the passage of the ordinance requiring the construction of the cement sidewalk, the owner of the property, in compliance with a prior ordinance, had constructed and put down, in the same place that the cement walk was to be, a six-foot wood walk, which at the time of the ordinance there objected to was practically new and as near in perfect order as a walk five months old could be. It further appeared in that case that the street upon which it was to be built had never been improved, curbed, graded or sewered, and the ordinance requiring the cement walk was, under such circumstances, held unreasonable and void.

It must be borne in mind that in the passage of ordinances providing for local improvements it is the peculiar province of the city council to determine the necessity and character of the improvement and the manner of its construction; (*English* v. *City of Danville*, 150 Ill. 92; *Vane* v. *City of Evanston*, id. 616; *Fagan* v. *City of Chicago*, 84 id.

227;) and we must also keep before us the presumption that always exists in favor of the validity of a statute or of an ordinance passed in pursuance of competent legal authority. (*Harmon* v. *City of Chicago*, 140 Ill. 374.) The question of the construction of walks and that class of improvements is expressly conferred upon the city council, and it may determine the extent and character of improvement required upon any given street, and include the same in one ordinance as one improvement, and under this rule may require walks to be built upon both sides of the same street by the same ordinance. (*Watson* v. *City of Chicago*, 115 Ill. 78.) In fact, it hardly seems necessary to extend any consideration of this question, as it is not contended by appellees that the city did not have power to pass an ordinance for an improvement of the street in question by building walks on both sides, but the insistence is that the particular ordinance that was passed is unreasonable, in that it requires the objectors to build a walk where no walk was necessary, or under such circumstances as that the building of the walk by special assessment imposed upon the objectors such an unjust and unnecessary burden as to render the ordinance unreasonable. We do not think this contention is supported by the facts in this case.

In *Walker* v. *Village of Morgan Park*, 175 Ill. 570, we had under consideration an ordinance providing for the building of one sidewalk 2475 feet in length, of which the objector owned 1950 feet, on one side of his premises, and of another sidewalk upon another side of the same premises 1850 feet in length, of which the objector owned 1150 feet, and that the cost to him of this walk would be $682 if done by the objector and $1178 if done by the village. It was there averred that there were no improvements of any character on the property owned by the objector, but that there were a few scattering buildings upon occasional lots owned by other persons along the line of the proposed improvement, and that the only benefit to

be derived from the walk was to enable people to go to a certain railroad station, and it was there contended that under that state of facts the ordinance providing for the walk was an unreasonable one and for that reason void. Of that contention it was said (p. 573): "From the allegations of the bill it is apparent that the real ground relied upon to defeat the ordinance providing for the construction of the sidewalk is, that the locality where the sidewalk is ordered constructed is so thinly settled that there is no necessity whatever for the construction of a sidewalk,—that no sidewalk was needed where it was ordered to be laid. What the public necessities were was a question solely for the determination of the president and board of trustees of the village of Morgan Park, and when the incorporation clothed with power has acted in strict conformity to the statute conferring the power, as was the case here, its decision must be held final and conclusive, unless it is apparent that the action of the municipality is unreasonable, unjust and oppressive, as held in *Hawes* v. *City of Chicago*, 158 Ill. 653. It may be that there was no pressing demand for the sidewalk in question, and that it would in the end have been better had its construction been postponed until the population of the village had increased; but that was a matter for the board of trustees to settle for themselves." And in that case the *Hawes case* was distinguished.

*Field* v. *Village of Western Springs*, 181 Ill. 186, was also a case where the unreasonableness of the ordinance was relied upon. That was a case for the construction of cement sidewalks upon certain blocks in said village, wherein it was alleged and contended that the streets along which the walks were to be laid existed in name only, and had never been laid out; that they were unpaved, uncurbed, ungraded and but little used dirt roadways, overgrown with grass and weeds, and that there were no conditions requiring, at that time, the building of such walks. In speaking of the powers of the city it

is there said (p. 191): "The question of the necessity of a local improvement is by the law committed to the city council, and courts have no right to interfere to prevent such improvement except in cases where it clearly appears that such discretion has been abused. The ground on which courts interfere is that the ordinance is so unreasonable as to render it void."

The case at bar seems to us to be much stronger than either of the latter cases. The district where this improvement is to be made is, as shown by the evidence, both a residence and business locality and within one block of the finest and most desirable residence portions of the city of Chicago. The walks existing at the time of the passage of the ordinance were as diversified in form of construction, width, material and condition as could well be in the distance covered by the improvement, running, as the evidence showed, from six feet in width to twenty feet,—which latter was the width designed for all the walks of that district, as established by the curb shown to have been already placed on each side. They were uneven, many of them old, and especially those of the objectors were both old, out of repair and were unsafe. The fact that objector Wilson, after the passage of the ordinance, caused considerable repairs to be placed on the walk in front of his premises, instead of being an argument against the reasonableness of this ordinance seems to us to be an admission of the reasonableness of it. In fact, the one who made the repairs, by the mere statement of the character of them, showed that the walk was both unsafe and unfit for a place of such prominence.

We think that the court was not warranted in holding this ordinance void for unreasonableness, and its judgment is accordingly reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.        *Reversed and remanded.*